So we'll start with the United States v. Light, 17-2447. Judge Lajere, Judge Lavelle, Judge Stein, at issue in this case is whether my client, because he viewed child pornography for a somewhat extensive period of time, whether he received a fair sentence consistent with Section 3553 of the Sentencing Guidelines. I suggest that this is an issue of importance not only to my client, but also to the Sentencing Guidelines, to the people, to the taxpayers who fund lengthy prison sentences when they are based on false premises that have been refuted, not only by courts, but by the Sentencing Commission itself. In this case, I suggest that my client was given a sentence much greater than is necessary when Judge Sharp, who in the past has expressed his view that people can't help themselves who do this. Counsel, yes, that's true, but that was some time ago, and he did not make any such reference in this sentencing. So I take it you're not arguing, or perhaps you are, that because he made those statements in the past, he's forever prohibited from sentencing somebody under these guidelines. That's a tough argument to make. Yes, that is my argument, in essence. It is my argument that in a child pornography case, given Judge Sharp's statement that this type of person can't help himself, and that the slide between viewing child pornography or distributing it peer-to-peer is the slide right to contact exploitation. I understand that. But if I remember the case that you're referencing, the sentence was vacated, sent back down, I think even to another judge. Yes. So why should we assume that Judge Sharp still has those theories? Well, we should assume that based on what he did in this case, which is he did not individualize this sentence in the least. He did not comment about defendant's condition, his medical problems, the fact that an expert who evaluated him said that he had a low risk of harming the community, that he himself admitted that what he did was wrong, and was willing to participate in a program. Judge Sharp didn't mention any of these things, but instead said that harm, which is true, harm done by people like you is very serious. What about the fact that the judge sentenced to the low end, the bottom of the range? Of the guidelines, absolutely. But my point is that... Why shouldn't we count that as perhaps indicating that he has no longer believes, I mean, one who firmly believed what the judge had said in the past might for that reason sentence to the top of the guideline range or above. Absolutely. One might sentence if one has this belief, which judges seem to do, and they are looking day after day, especially judges I see at the Northern District of New York, they are looking day after day after day at images, which I review the titles of, and you can see the titles of in the PSR, which I submitted under seal. It's amazing to me, why don't they sentence to a life sentence if that's what people believe? That is what people believe, but the fact that Judge Sharpe gave a sentence at the low end of the guidelines without considering anything about the defendant, about the personality, about the conditions of the defendant, shows that he was wedded to the sentencing guidelines. But beyond that, we have to start with Dorvey. Dorvey... Cited Dorvey. No, yes, he cited Dorvey, but what he did not cite was Jenkins. Jenkins was decided by this court three months, I believe it was, before Judge Sharpe sentenced my client. Jenkins was the one that says that the guidelines are not premised on empirical conditions. In Jenkins, the court said that the sentencing commission itself did not agree with the guidelines. I think Judge Parker in Dorvey said the same thing, and in Jenkins, the sentence was, I think, substantially higher. Yes. And in Jenkins, the defendant there expressed the view that the United States had no business prosecuting him, and expressed arrogance. What I'm saying is that Judge Sharpe did not at all individualize this sentence, so let's put aside for the moment whether you believe that the case should be remanded to a different judge. I would, if I represent a client before Judge Sharpe, I would really challenge his viewpoint about child pornography defendants, which was not done there. But let's assume it's not, you don't agree, but the point is that in this case, not one item concerning the defendant or his circumstances was raised, was used, by commented on by Judge Sharpe, and that shows that he did not give an individualized sentence. Whether he's capable of doing so in your minds, and it's up to you, or whether he's not, is a point, but it's not the point of whether my client received a fair sentence and consistent with Section 3553. If I remember, he did refer to the subdivisions of 3553 and said he was dealing with them in fashioning his sentence. He said he agreed with the enhancements, the Sentencing Commission's notions of adding enhancements for what Dorvey and Jenkins has said are enhancements which apply universally and almost to everybody. Research that I cited in my brief, but I won't go into ad nauseum here, but that research shows that those enhancements are routinely applied. They have to be applied. They apply to everybody, but they apply to people who violate children besides people who just sit in their room with an illness like my client and do nothing but view. Society has deemed it necessary to punish people, the end users, but the market conditions creating a market and emphasizing that or emphasizing the length of time ascribes a weight that the guidelines should not bear, and certainly Section 3553 does not bear. Thank you very much. I've reserved time for rebuttal. Thank you. Ms. Schoenberger. May it please the Court, Karina Schoenberger for the United States. Mr. Light's sentence should be affirmed, and his ineffective assistance claim should be rejected. The district court here imposed a substantively reasonable sentence with reference to specific sentencing factors related to Mr. Light's case. It was an individualized sentence. Specifically, the district judge referenced the length of the crime, the extent of the harm on victims, and Mr. Light's inability to appreciate the harm. Could you raise the podium? His inability The podium goes up, does it not? It may be as far up as it goes. Sorry, go ahead. And with respect to the mitigating factors, in addition to the factors that the district court referenced, all of the mitigating factors that are raised in Mr. Light's brief here were also set forth in a sentencing memorandum that was submitted to the court. He submitted a psychological evaluation that had some of these factors, and the court said that it had considered all of them. There's a presumption that he carried out his duty to consider those factors, and there's no indication in the record that he did not. And as noted, he sentenced Mr. Light to the bottom of the range that was applicable to his guideline. I think, I agree that, as you might imagine, that district judges should have broad leeway in terms of sentencing. But in terms of substantive reasonableness here, 151 months is about 12 years, is that right? That's right, about 12 and a half. No contact with children whatsoever, no indication that he ever would do that. I think there's actually contraindication in some of the materials, but absolutely no contact. No danger, apparently, to other children, just a very sick man who sits in his room and watches this terrible stuff. 12 years? He needs help. Are we doing that? Are the ends of justice being met with a 12-year sentence for a sick individual? Yes, Your Honor. This defendant wasn't just watching this content in the privacy of his home, he was also distributing it online. He maintained a huge collection. He was distributing, I agree with that, but he was distributing it by virtue of being connected to a peer-to-peer network, correct? That's right. He didn't do anything affirmative to sell it or to send it out. It's not clear. He was trading, so he was receiving links in exchange for sharing it. He had been doing this by his own admission for at least 12 years. While there's no contact in his offense of conviction, there is indications in the pre-sentence investigation report and his own psychological evaluation that he submitted at the district court level that he couldn't appreciate the sexual boundaries between adults and children. In his psychological evaluation, he admitted that he was attracted to children. The psychologist concluded that he had confusion about what the boundary between adults and children were, that he didn't understand why there couldn't be sexual contact between adults and children, and that he held an erroneous belief that some children wanted to engage in sexual activity with adults. And there are facts in the pre-sentence report that were also of concern, including the fact that Mr. Light had taught a young member of his immediate family how to view pornography online. I saw that. That was his son. What about Ms. Shevitz's point that I'll expand a little, that the enhancements for prepubescent minor sadomasochistic conduct, use of a computer, and 600 or more images are 90-plus percent of these cases have all of those aspects. And therefore, under Dorvay, and I think Jenkins, it's improper compounding of the enhancements. That was certainly the concern that animated both Dorvay and Jenkins, and it was a concern that Judge Sharp here was mindful of. And like this court that concluded in Dorvay and Jenkins, sentences should be fashioned not just with reference to the sentencing guideline 2G2.2, but the specific factors of the case. And that's exactly what Judge Sharp did here. And I would say that the Dorvay opinion describes these as being all-but-inherent enhancements in the crime, but I would push back on that a little bit because they are, in fact, factors that are all-but-inherent to federal prosecutions. There's many ways to violate the child pornography laws that do not involve having hundreds and hundreds of images, that do not involve using a computer, that do not involve violent depictions of abuse of infants and toddlers. Prosecutors have choices to make, and so many of the cases that this court sees, and certainly the district court sees, involves these horrific actions. But that doesn't mean that they are an essential component of the crime, and it doesn't mean that they shouldn't be punished harshly. These are laws that are designed to protect some of the most vulnerable people in our society. Many of these child pornography cases of the type that you're describing appear to come out of the Northern District of New York. Why is that compared to other districts within the Second Circuit? Do you know? I don't think that I can answer that question. We certainly see a lot of them, and we certainly have many that are handled by the state as well that don't make it to the level of federal prosecution. You also ask us to reject the ineffective assistance of counsel claim outright, and as you know, the ordinary course is to decline to consider the claim and let the appellant raise that in a habeas petition. Why shouldn't we do that here? Your Honor, I think it would just be a more efficient route to reject it on direct appeal because the record shows that Mr. Light has not and cannot support his burden of showing that there was ineffective assistance. The only error that he raises is his attorney's decision not to move for the recusal of Judge Sharp here. As we've noted in our brief, Judge Sharp has sentenced numerous cases in the child pornography and child Mr. Light's attorney would have had no basis to think that that motion would have been successful, and it is also Mr. Light's burden to show that he was prejudiced by that decision, and he can't do that here. He can't show that he could have gotten the judge accused or that he would have received any sort of different sentence if a different judge had sentenced him. He was sentenced within the guidelines. There's no argument that the sentence enhancements that were applied here shouldn't have been applied, but rather that the judge should have departed or varied below the applicable guidelines. Your view is we don't need to hear from the attorney, we don't need to have anything more than what's already in the record, and Judge Sharp's past decision? Correct, Your Honor. What is the theoretical justification for adding levels simply because a computer was used? Because the crime is proliferated with the use of a computer because the child pornography can be traded and accessed so easily. Well, I think you're referring to using the Internet. Using a computer doesn't necessarily mean using the Internet. Using a computer doesn't mean you do have, in this case, some trading of images and distributing images by the defendant through the Internet, but use of a computer by itself doesn't necessarily imply those things. And I just wonder whether making use of a computer by itself, apart from doing the things that increase the harm which a computer is capable of facilitating but doesn't necessarily facilitate, whether that's just a device used by the guidelines to heap on sentence, purporting to point to different factors when they aren't really different factors. I think one of the other concerns that is behind a number of the factors is the impact on the market, and the use of the computer feeds the demand for digital images. Demand for? Digital images, which again are the types of images that abusers take and use and then distribute online. So regardless of whether it's being distributed again, it does increase the demand for digital images rather than print images, which are simply harder to exchange and send out broadly into the world the way that they are when they're in a digital format. Thank you very much. Thank you, Your Honors. I'd like to address first the prosecutor's suggestion that because Mr. Leitz stated that he was attracted to children, that suggests that a lengthier sentence is necessary than one at the bottom of the required statutory sentence. He said he was attracted to children. In this day and age, people show that they're attracted to all sorts of people, with pornography and sexual violence and sexual aggression. He also said that he was amenable to a sex program and that he will never do it again and that this was a real wake-up call. So whatever it is he was attracted to, he never did that. He never took it out physically. Everybody who has pled guilty shows, essentially everybody who has pled guilty shows remorse at sentencing. What really can we take from that? This was not only remorse at sentencing. This was remorse from the minute he got caught. He stated, he agreed, he confessed. He said, I've been doing this. I don't know why I'm doing it. Yes, I'm attracted. I thought it was okay. And even Judge Sharpe said, it's too bad you didn't realize it wasn't okay. That's true. I agree with that 100%, but wouldn't a five-year sentence in do the same thing for him? He now knows it's not okay, and he's willing to accept that. There is no mitigating factor that was taken into consideration here by Judge Sharpe. Not one. Judge Sharpe said he agreed with the guidelines, even though the Sentencing Commission does not. Judge Sharpe said he agreed with the enhancements, even though, as Judge LaValle said, using a computer is nowadays like writing anything down. It's what people do. I want to point out there's one case, a Third Circuit case, I believe it's called Holwell. I forgot to bring it with me. October 10th, in which the court ruled that the supervised release restrictions of not using a computer were unconstitutional or at least improper. The impact on the market. Yes, my client did this a long time. He stopped. He said, in fact, one of the statements he made to his expert was, I can quit cold turkey. This was something of interest, titillating, I guess. That is this man. But the point is that the trial judge, the sentencing judge, didn't consider this man, didn't consider his expert statement. Ms. Schoenberger, with respect to your ineffective assistance of counsel claim, says that we have enough on this record to outright reject that. What's your response? Well, I think you have enough on the record to show that the trial lawyer did not cite Jenkins, even though Jenkins had been decided. The trial lawyer therefore agreed with the enhancements, did not fight the enhancements on that type of ground on Dorvey. He mentioned Dorvey, but didn't challenge the enhancements. My concern as a defense lawyer is that when you relegate a client to a 2255, in a 2255 proceeding- Your time apparently is up, but go ahead. I think that's my phone, which I thought I turned off. But maybe that means I will turn it off as soon as I shut up. I'm sorry. I think the bell is tolling. The bell is tolling. But a 2255, you don't get a lawyer. That's the problem. But I believe on this record you can show, you can see that the real considerations were not considered and that Judge Sharp had kind of made up his mind about the guidelines, had accepted them. The trial lawyer accepted the guidelines. Do you think that we could, based on this record, rule one way or the other, we have enough? Probably yes. Probably yes. And I would be concerned about remanding it unless you directed the Court to- The problem with considering a 2255 on a direct appeal, if it wasn't raised on the district court, is that you don't know, one simply doesn't know what was in the lawyer's mind, whether he had a reason, there are all kinds of things that one doesn't know. One doesn't have the facts. There's no reason not to consider an ineffective assistance of counsel claim in circumstances, in the relatively rare circumstances, when it was raised in the district court. But could there be a reason to not cite Jenkins and not discuss Jenkins? If there was a reason, it was a bad reason because it doesn't make sense whatsoever. That's the problem here. So you're saying raising a 2255 on direct appeal, I say raising ineffectiveness, not raising a 2255 because it's not a 2255. It's just a circumstance that shows that because of the failure to make these arguments, my client is another factor, Judge Sharpe's predisposition and my — and his trial lawyers, and on the record it showed that this was the first child pornography case he ever had done. He didn't make these arguments, and Judge Sharpe did not consider that the Sentencing Commission itself has said that its own guidelines are no good. Thank you very much. Thank you.